Ronnie **WINKLER,** Appellant–Plaintiff,

v.

**V.G. REED & SONS, INC., Arthur S. Overbay, Jr., and Typoservice Corporation, Appellees–Defendants.**

**No. 30A01–9304–CV–145.**

Court of Appeals of Indiana, First District.

Aug. 30, 1993.

Patrick N. Ryan, Marion, for appellant-plaintiff.

Darryl W. Durham, Gene F. Price, Alagia, Day, Trautwein & Smith, Louisville, KY, James A. Knauer, Marcia E. Roan, Kroger, Gardis & Regas, Indianapolis, for appellees-defendants.

BAKER, Judge.

Plaintiff-appellant Ronnie Winkler asks us to determine that factual issues require a trial on his allegations that his former employer, its president, and another company breached his written employment contract and conspired to tortiously interfere with his contract. We deny his request and affirm the summary judgments in favor of defendants-appellees Typoservice Corp., Arthur S. Overbay, Jr., and V.G. Reed & Sons, Inc.

## FACTS

In 1989, Overbay was the president and a stockholder of Typoservice, a printing and typesetting business. On August 29, 1989, Winkler signed a fifteen-year employment contract to be the general manager of one of Typoservice's divisions. Overbay, in his capacity as Typoservice's president, executed the employment contract.

On July 24, 1991, V.G. Reed & Sons, Inc. (Reed), a Kentucky printing corporation, executed an asset purchase agreement to buy Typoservice's assets. Reed agreed to assume up to $2,200,000 of Typoservice's debts on its inventory. In September 1991, Reed incorporated V.G. Reed & Sons/Midwest, Inc. (Midwest) in Indiana. Subsequently, on September 30, 1991, Reed and Typoservice amended their asset purchase agreement to substitute Midwest as the buyer of Typoservice's assets. The final asset purchase agreement specifically excluded Midwest's acceptance of Winkler's employment agreement. Eight days after it acquired Typoservice's assets on October 1, 1991, Midwest discharged Winkler.

Winkler filed suit alleging breach of employment contract (Count I), conspiracy to violate the employment contract (Count II), and tortious interference with employment contract (Count III). Summary judgment was entered in favor of all defendants on all counts, except for Count I against Typoservice, which claim remained for trial because summary judgment was not requested.

## DISCUSSION AND DECISION

Summary judgment is appropriate if the movant shows no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Babinchak v. Town of Chesterton* (1992), Ind.App., 598 N.E.2d 1099, 1101. Once the movant makes this showing, the burden shifts to the nonmovant to demonstrate the existence of a genuine issue for trial. *Id.* If an essential element to prove a claim is absent, summary judgment is mandated. *Moore v. Sitzmark Corp.* (1990), Ind.App., 555 N.E.2d 1305, 1306–07.

### I. Breach of Employment Contract—Count I

#### Overbay

■ Winkler contends summary judgment was improper because genuine issues of material fact exist regarding whether Overbay's conduct rendered him responsible for the breach of the employment con-

tract. Overbay responds he is not liable for any breach because he was not a party to Winkler's employment contract with Typoservice and signed it only in his capacity as president. Generally, contract claims in Indiana may be brought only against a party to the contract or those in privity with a party. *See Implement Service, Inc. v. Tecumseh Products Co.* (S.D.Ind.1989), 726 F.Supp. 1171, 1182. Corporate officers signing contracts on behalf of their corporation generally are not liable individually for the contracts. *Weeks v. Kerr* (1985), Ind.App., 486 N.E.2d 10, 12, *trans. denied* (1986).

■ As the movant for summary judgment, Overbay presented the employment agreement, which was signed "Arthur S. Overbay, Jr., President, Typoservice Corporation." *Record* at 326. His signature and title on the contract facially supports his contention he executed Winkler's employment agreement solely for Typoservice's benefit. Thus, Overbay satisfied his burden of showing no issue of material fact existed as to his personal liability.

■ In response to Overbay's motion for summary judgment, Winkler argued the corporate veil of Typoservice should be pierced to hold Overbay personally liable. *See Weeks, supra.* A corporate veil is pierced when a corporate officer disregards the corporate form and treats the corporation as a conduit for his personal business affairs. *Id.* To support his argument for piercing the corporate veil, Winkler designated the following facts to the trial court pursuant to Ind. Trial Rule 56(C): "Overbay is the majority stockholder and president of Typoservice. He was the boss and made all decisions.... [H]e personally signed the contract with Typoservice to sell the assets to the Reed Corporation and personally kept the assets not sold." *Record* at 428.

■ We find Winkler failed to exhibit a genuine issue of material fact whether Overbay treated Typoservice as a conduit for his own personal affairs. Winkler's allegations merely reflect actions any corporate president might legally perform. The fact

that Overbay received any remaining assets of Typoservice after the sale to Midwest is insufficient to defeat summary judgment. *See Gurnik v. Lee* (1992), Ind. App., 587 N.E.2d 706, 710 (proceeds from sale of company's assets distributed to its majority shareholder was not sufficient to justify piercing the corporate veil). Winkler has not satisfied his burden to preclude summary judgment for Overbay.

### Reed

■ Similarly, Reed also contends it was not a party to Winkler's employment contract with Typoservice and therefore is not liable for any breach. *See Implement Service, supra,* at 1182 (contract claims can only be brought against party or privy to contract). Winkler admits Reed did not sign the employment contract but argues that Reed assumed the employment contract when its wholly owned subsidiary, Midwest, purchased Typoservice's assets. Reed denies any liability arising out of Midwest's purchase of Typoservice's assets because Midwest is a separate entity from Reed. In response, Winkler contends Midwest is the alter-ego of Reed, and the corporate veil should be pierced.[1]

Midwest agreed to purchase Typoservice's assets. In doing so, Midwest did not become liable for all of Typoservice's debts and liabilities. "Under the well-settled rule of corporate law, where one company sells or transfers all of its assets to another, the second entity does not become liable for the debts and liabilities, including torts, of the transferor." *Markham v. Prutsman Mirror Co.* (1991), Ind.App., 565 N.E.2d 385, 387 (quoting *Polius v. Clark Equipment Co.* (3rd Cir.1986), 802 F.2d 75, 77). Here, the asset purchase agreement expressly excluded Midwest's assumption of Winkler's employment agreement with Typoservice. The conclusion that Midwest did not assume liability for any breach of Winkler's employment agreement is inescapable. Accordingly, even if we would find Midwest to be Reed's alter-ego, Reed would not be liable to Winkler for breach of contract

because Midwest is not. Summary judgment in Reed's favor was proper.

### II.   Conspiracy to Violate Employment Contract—Count II & Tortious Interference with Employment Contract—Count III

■ We consider Winkler's arguments on Counts II and III together, because civil conspiracy is not an independent cause of action. *See Boyle v. Anderson Fire Fighters Association* (1986), Ind.App., 497 N.E.2d 1073, 1079, *trans. denied.* Winkler essentially alleges the defendants acted in concert and tortiously interfered with his employment contract.

■ We first observe that Typoservice was a party to the employment contract, and the law does not subject a party to a contract to any liability for tortious interference with its own contract. *See Kiyose v. Trustees of Indiana University* (1975), 166 Ind.App. 34, 333 N.E.2d 886, 891. Indiana recognizes liability, though, if the party conspired with another to tortiously interfere with its contract. *Wade v. Culp* (1939), 107 Ind.App. 503, 508, 23 N.E.2d 615 (party liable for conspiring to breach his own contract). Because Winkler alleges conspiracy of tortious interference with contract, Typoservice cannot avoid liability relying on the *Kiyose* rule.

■ The elements of an action for tortious interference with contractual relations are: 1) existence of a valid and enforceable contract, 2) defendant's knowledge of the contract's existence, 3) defendant's intentional inducement of the contract's breach, 4) absence of justification, and 5) resulting damages. *Furno v. Citizens Insurance Co.* (1992), Ind.App., 590 N.E.2d 1137, 1139–40, *trans. denied.* Typoservice, Overbay, and Reed contend summary judgment was proper because Winkler has failed to establish the absence of justification. To satisfy this element of the tort, the breach must be malicious and exclusively directed to the injury and damage of another. *Flintridge Station Association v. American Fletcher Mortgage Co.*

---

1. Midwest is not a party to this action.

(7th Cir.1985), 761 F.2d 434, 441; *see also Economation, Inc. v. Automated Conveyor Systems, Inc.* (S.D.Ind.1988), 694 F.Supp. 553, 562. The existence of a legitimate reason for the defendant's actions provide the necessary justification to avoid liability. *Id.* The defendants have alleged the asset sale was a legitimate business deal. Winkler fails to argue that Typoservice sold its assets to Midwest solely to breach the employment contract with Winkler. Winkler has failed to sustain his burden of showing an element of the conspiracy of tortious interference with contract, namely the absence of justification. *Moore, supra.* Thus, the trial court properly entered summary judgment in favor of each defendant on Counts II and III.

Affirmed.

SHARPNACK, C.J., and SHIELDS, J., concur.