**MORGAN ASSET HOLDING CORPORATION, Appellant, Cross–Claim Plaintiff,**

v.

**CoBANK, ACB, Appellee, Cross–Claim Defendant.**

No. 49A05–9910–CV–473.

Court of Appeals of Indiana.

Oct. 25, 2000.

Gary P. Price, Todd A. Richardson, Lewis & Kappes, Indianapolis, Indiana, Attorneys for Appellant.

James E. Carlberg, George T. Patton, Jr., Bose McKinney & Evans, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

VAIDIK, Judge

### Case Summary

Morgan Asset Holding Corporation ("Morgan Asset") appeals the trial court's grant of CoBank's motion to dismiss a cross-claim based on Morgan Asset's failure to state a claim upon which relief could be granted. First, Morgan Asset asserts that CoBank tortiously interfered with Morgan Asset's subordination agreement with Eastern Morgan County Rural Water Company Inc. ("the Utility") by executing the First Amendment to the Amended and Restated Construction Loan Agreement ("First Amendment") between CoBank and the Utility. Secondly, Morgan Asset contends that CoBank committed constructive fraud by failing to inform Morgan Asset of changes made in the First Amendment. Morgan Asset argues that it pled sufficient facts to state claims of tortious interference and fraud and that Co-Bank has merely raised factual disputes, which do not support dismissal. We conclude that Morgan Asset failed to allege adequately that CoBank was unjustified in its actions, and therefore, Morgan Assets failed to state a claim for tortious interference with contract. Furthermore, it is clear from the face of the cross-claim that there is no fiduciary relationship between CoBank and Morgan Asset that would create a duty; thus Morgan Asset has failed to state a claim for constructive fraud. Therefore, we affirm.

### Facts and Procedural History

When the Utility began planning and constructing a water system, Reynolds Construction Management and Capitol Engineering, Inc. (collectively, "Reynolds") provided engineering and construction services for the project. As of May 1995, the Utility owed Reynolds $970,991 in unsecured debts.[1]

On May 25, 1995, the Utility entered into a construction loan agreement with CoBank to provide financing, and the par-ties executed a security agreement to secure the loan. As a condition of the loan, CoBank required the Utility's pre-existing creditors to subordinate and defer their interests. The Utility and Reynolds entered into subordination agreements in which Reynolds agreed to defer payment until certain financial thresholds were satisfied. Both the loan agreement and the subordination agreements excluded third-party beneficiaries.

Approximately two years later, the Utility and CoBank amended the construction loan agreement because the Utility had not met the projections of the original agreement. Reynolds again executed subordination agreements. All of the agreements excluded third-party beneficiaries. The subordination agreements provided that Reynolds would not be paid until the Utility reduced its debt. The agreements contemplated that the Utility could seek a rate increase from the Indiana Utility Regulatory Commission ("Commission") in order to satisfy present and future loans.

The Utility then petitioned the Commission for an 80.5 percent increase in its rates and charges. However, some months later, the Utility executed the First Amendment with CoBank, which provided for a 19.5 percent increase in the Utility's rates and charges instead of the requested 80.5 percent increase. The First Amendment provided that the utility agreed "to utilize its best efforts to obtain a 19.5 percent rate increase from the ... Commission." Further, the First Amendment provided that "[n]o intent exists hereunder to alter the rights of the creditors of the [Utility] that have entered into subordination agreements with the [Utility] and each such creditor shall retain all rights (if any) to payment as contemplated by each such creditor's subordination agreement." Record at 1497. Shortly thereafter, as required by the First Amendment, the Utility reduced its re-

---

1. Morgan Asset is the assignee of debts owed by the Utility to Reynolds.

quested rate increase pending before the Commission to 19.5 percent.

Five months later, IWC Resources Corp. (IWC) made an offer to purchase the Utility, but the Utility rejected the offer. Nine days later, the Utility filed a complaint against CoBank and IWC in which the Utility alleged breach of financing commitments, interference with efforts to sell the Utility's assets, and interference with certain contractual relationships. CoBank assigned its interest to IWC. Morgan Asset, as assignee of the debts owed to Reynolds, moved to intervene as a defendant, and the court granted the motion. Ten days later, the trial court approved a settlement agreement reached by the Utility, CoBank, and IWC. Morgan Asset was not party to the settlement agreement.

Instead, Morgan Asset filed an answer to the Utility's complaint and asserted cross-claims against CoBank for tortious interference with a contract and constructive fraud. CoBank filed its answer and moved to dismiss the cross-claims for failure to state a claim pursuant to Indiana Trial Rule 12(B)(6). Morgan Asset now appeals the trial court's dismissal of its cross-claims against CoBank.

### Discussion and Decision

#### Standard of Review

Our standard of review of a dismissal granted pursuant to Indiana Trial Rule 12(B)(6) is well settled:

> A trial rule 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the sufficiency of a claim, not the facts supporting it. Therefore, we view the pleadings in the light most favorable to the nonmoving party and draw every reasonable inference therefrom in favor of that party. When reviewing a ruling on a motion to dismiss, we stand in the shoes of the trial court and must determine if the trial court erred in its application of the law.

*Borgman v. Aikens,* 681 N.E.2d 213, 216–17 (Ind.Ct.App.1997), *trans. denied.* When reviewing a motion to dismiss for failure to state a claim, "this court accepts as true the facts alleged in the complaint." *Minks v. Pina,* 709 N.E.2d 379, 381 (Ind. Ct.App.1999), *trans. denied.* However, only well-pleaded material facts must be taken as admitted. *Anderson v. Anderson,* 399 N.E.2d 391, 406 (Ind.Ct. App.1979). "Furthermore, a court should not accept as true allegations that are contradicted by other allegations or exhibits attached to or incorporated in the pleading." *Brenner v. Powers,* 584 N.E.2d 569, 573 (Ind.Ct.App.1992) (citing 5A WRIGHT AND MILLER, FEDERAL PRACTICE AND PROCEDURE, Civil Section 1363, p. 464), *trans. denied.* "We will affirm a successful T.R. 12(B)(6) motion when a complaint states a set of facts, which, even if true, would not support the relief requested in that complaint." *Minks,* 709 N.E.2d at 381. Furthermore, we will affirm the trial court's ruling if it is sustainable on any basis found in the record. *Id.*

#### I. Tortious Interference with Contract

Morgan Asset asserts that CoBank interfered with its contract with the Utility by executing the First Amendment. Specifically, Morgan Asset alleges that CoBank knew that reducing the requested increase in rates from 80.5 percent to 19.5 percent as set forth in the First Amendment would make the Utility unable to meet its obligations under the loan agreement and subordination agreements, and therefore, the subordinated creditors would not be paid. Morgan Asset contends that the trial court erred in granting CoBank's motion to dismiss because CoBank attacked the cross-claim with factual disputes that cannot be resolved on a motion to dismiss. CoBank argues that Morgan Asset failed to allege adequately an essential element of a claim for tortious interference, namely, that CoBank's conduct was unjustified.[2]

---

2. CoBank makes much of the fact that Morgan Asset cited different authorities on appeal

■ To state a claim for tortious interference with contract, a plaintiff must allege 1) the existence of a valid and enforceable contract, 2) the defendant's knowledge of the existence of the contract, 3) the defendant's intentional inducement of breach of the contract, 4) the absence of justification, and 5) damages resulting from the defendant's wrongful inducement of the breach. *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1235 (Ind. 1994), *aff'g* 619 N.E.2d 597 (Ind.Ct.App. 1993). A plaintiff must state more than a mere assertion that the defendant's conduct was unjustified. *See HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 137 Ill.Dec. 19, 545 N.E.2d 672, 677 (1989) (noting that "[t]o properly state a cause of action for intentional interference with contractual rights, a plaintiff must state more than a mere assertion that the defendant's conduct was unjustified"; rather "the plaintiff must set forth factual allegations from which it can reasonably be inferred that the defendant's conduct was unjustified"). "To satisfy [the element of lack of justification], the breach must be malicious and exclusively directed to the injury and damage of another." *Winkler v. V.G. Reed & Sons, Inc.*, 619 N.E.2d 597, 600–01 (Ind.Ct.App. 1993) (citations omitted), *aff'd*, 638 N.E.2d 1228 (1994); *see also Flintridge Station Associates v. American Fletcher Mortgage Co.*, 761 F.2d 434, 441 (7th Cir.1985) (defining unjustified as "disinterested malevolence"; · "a malicious [conduct] unmixed with any other and exclusively directed to injury and damage of another"); *Economation, Inc. v. Automated Conveyor Sys., Inc.*, 694 F.Supp. 553, 562 (S.D.Ind.1988). Moreover, the existence of a legitimate reason for the defendant's actions provides the necessary justification to avoid liability. *Winkler*, 619 N.E.2d at 600–01.

■ In its cross-claim, Morgan Asset alleged that "[n]o justification exists for CoBank's inducement of the breach of the Subordination Agreements by EMCRW." Record at 1191. This conclusory statement without more is not sufficient to allege the absence of justification. Rather, Morgan Asset must allege conduct by CoBank that was intended for the sole purpose of causing injury and damage to Morgan Asset.

In its reply brief, Morgan Asset urges that it did adequately allege the absence of justification in its cross-claim when it asserted that CoBank "engaged in a strategy specifically intended to thwart efforts by the subordinated creditors . . . to enforce their rights under the Subordination Agreements." Record at 1190. However, this statement does not necessarily mean that such intent to "thwart" was the *exclusive* purpose of the First Amendment. To the contrary, the First Amendment specifically provides that "[f]or various reasons, the [Utility] has been unable to meet its obligations under the Loan Agreement and is presently in default thereunder. *In an effort to assist the [Utility] overcome its problems*, CoBank and the [Utility] have agreed to modify the Loan Agreement." Record at 2245 (emphasis added).

Moreover, the First Amendment expressly indicates that "[n]o intent exists hereunder to alter the rights of the creditors of [the Utility] that have entered into subordination agreements with the [Utility], and each such creditor shall retain all rights (if any) to payment as contemplated by each such creditor's subordination

and contends that reliance on new authorities is improper. Appellee's Brief at 23–24, 26. We disagree. As our appellate rules specifically provide, "[a]dditional authorities in support of any proposition stated in the briefs, may be filed by either party at any time, without comment or argument." Ind. Appellate Rule 8.4(B). We urge counsel to review carefully the cases relied upon to ensure that those cases stand for the proposition stated in the briefs. Thus, while the failure to cite to *any* authority on appeal may result in waiver, *see* Indiana Appellate Rule 8.3(A)(7); *Trueblood v. State*, 715 N.E.2d 1242, 1261 n. 37 (Ind.1999), *petition for cert. filed* (U.S. June 19, 2000) (No. 99–10061), citing *new* authority on appeal is permitted.

agreement." Record at 2248. Thus, Morgan Asset failed to allege that CoBank acted exclusively to harm Morgan Asset's business interests, and therefore, the trial court correctly dismissed the claim of tortious interference with contract.[3]

## II. Constructive Fraud

Morgan Asset contends that CoBank committed constructive fraud by failing to inform Morgan Asset of the changes to the loan agreement as executed in the First Amendment. Specifically, Morgan Asset asserts that CoBank had a duty to keep Morgan Asset informed based on the relationship between them.

■ To state a claim for constructive fraud, a plaintiff must allege 1) a duty existing by virtue of the relationship between the parties; 2) representations or omissions made in violation of that duty; 3) reliance thereon by the complaining party; 4) injury to the complaining party as a proximate result thereof; and 5) the gaining of an advantage by the party to be charged at the expense of the complaining party. *Wells v. Stone City Bank,* 691 N.E.2d 1246, 1250–51 (Ind.Ct.App.1998), *trans. denied.*

■ Morgan Asset alleges no facts supporting a relationship that would give rise to a duty. Rather, Morgan Asset merely alleges a duty based on a nebulous association between CoBank and Morgan Asset. It is apparent from the face of the cross-claim that there is no relationship creating a duty. CoBank and Morgan Asset are not in a fiduciary or confidential relationship.

■ Furthermore, the parties cannot rely on a contractual relationship to create a duty. Contractual agreements do not give rise to a fiduciary relationship creat-

ing a duty. *See Comfax Corp. v. North American Van Lines, Inc.,* 587 N.E.2d 118, 125–26 (Ind.Ct.App.1992) (holding that arms-length, contractual arrangement does not create a fiduciary relationship and does not provide basis for constructive fraud claim); *see also Orem v. Ivy Tech State College,* 711 N.E.2d 864, 869 (Ind.Ct. App.1999) ("There must always be a violation of some duty owing to plaintiff, and generally such duty must arise by operation of law and not by mere agreement of the parties.") (citing BLACK's LAW DICTIONARY 1489 (6th ed.1990)), *trans. denied.* Here, the parties do not even have a contractual relationship. Neither can Morgan Asset rely on a debtor-creditor relationship to invoke a duty. *See Huntington Mortgage Co. v. DeBrota,* 703 N.E.2d 160, 167 (Ind.Ct.App.1998) (holding that "[a] lender does not owe a fiduciary duty to a borrower absent some special circumstances"). Absent a special relationship, CoBank does not have a duty to Morgan Asset. Thus, Morgan Asset has failed to allege a claim for constructive fraud, and the trial court properly dismissed this claim. Therefore, the trial court properly granted CoBank's motion to dismiss Morgan Asset's cross-claims pursuant to Indiana Trial Rule 12(B)(6).

Judgment affirmed.

SULLIVAN, J., and BAILEY, J., concur.

---

**3.** Furthermore, we note that CoBank is a secured creditor of the Utility. A party is justified in interfering with a third party's contract if it "assert[s] in good faith a legally protected interest of [its] own ... if the actor believes that [its] interest may otherwise be impaired or destroyed by the performance of the contract or transaction." RESTATEMENT

(SECOND) OF TORTS § 773 (1979). Generally, "a secured party is justified in interfering to protect a superior security interest." *In re Quality Processing Inc.,* 9 F.3d 1360, 1365 (8th Cir.1993). *See also Winkler,* 638 N.E.2d at 1236 (holding that absent willful or spiteful intent to injure, defendant was entitled to protect his business interests).