# FOR PUBLICATION



FILED
Dec 18 2014, 8:39 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**EDWARD P. GRIMMER**
**DANIEL A. GOHDES**
Edward P. Grimmer, P.C.
Crown Point, Indiana

ATTORNEYS FOR APPELLEES:

**JOHN E. HUGHES**
**LAUREN K. KROEGER**
Hoeppner Wagner & Evans LLP
Merrillville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DAWN DUTY, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 64A03-1407-PL-255 |
| | ) | |
| BOYS AND GIRLS CLUB OF PORTER | ) | |
| COUNTY and CHUCK LEER, | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable William E. Alexa, Judge
Cause No. 64D02-1309-PL-8059

**December 18, 2014**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

Dawn Duty appeals the trial court's dismissal of her complaint against Boys and Girls Club of Porter County ("BGC") and Charles R. Leer for failure to state a claim upon which relief can be granted. Duty presents a single issue for our review, namely, whether the trial court erred when it dismissed her complaint.

We affirm in part, reverse in part, and remand for further proceedings.

**FACTS AND PROCEDURAL HISTORY**

Duty and Leer were both employed by BGC.[1] At some point, Duty

> reported [to someone at BGC regarding the] financial practices of then[-] President Charles R. Leer and the financial officer of [BGC,] which violated good accounting practices, policy[,] and recommendations of the national Boys and Girls Clubs, and transparency as to all income and where it is in [BGC']s accounts, which reported practice was criticized in audit thereafter.

Appellant's App. at 74. Leer's employment with BGC ended in April 2013. And in July 2013, BGC terminated Duty's employment.

On September 10, 2013, Duty filed a complaint against BGC and Leer alleging wrongful discharge (against BGC) and tortious interference with a business relationship (against Leer). In particular, Duty alleged that BGC had violated its own policy to protect employees "from any adverse consequence or retaliation for reporting under the 'Whistleblower' policy" as set out in BGC's employee handbook, which, Duty alleged, created a "quasi-contract." Id. at 10. And Duty alleged that Leer, a former BGC employee, had persuaded the interim Chief Executive Officer of BGC to terminate Duty's employment.

---

[1] The complaint does not state when each of the parties began their employment with BGC.

The "Whistleblower Policy" included in BGC's employee handbook, relevant portions of which were attached to Duty's complaint, states in relevant part as follows:

If an employee believes that any employee of [BGC] may be acting in violation of [any federal, state, or local laws and regulations that apply to BGC and its business operations,]—or in violation of a [BGC] policy—the employee has a duty to report the perceived violation to their [sic] supervisor or to the Director of Operations as soon as possible or reasonable under the circumstances. . . .

* * *

Whistleblower protections are provided in two important areas— confidentiality and against retaliation. . . . This includes, but is not limited to, protection from retaliation in the form of an adverse employment action such as termination, compensation decreases, or poor work assignments and threats of physical harm. . . .

Id. at 47.

BGC and Leer filed a joint motion to dismiss Duty's complaint, and Duty moved the trial court for leave to file an amended complaint. In her first amended complaint, Duty alleged two additional counts against Leer, namely, tortious interference with a contractual relationship and "disparagement." Id. at 41. On March 5, 2014, the trial court issued an order stating in relevant part as follows:

Defendants' Motion to Dismiss under Indiana Trial Rule 12(B)(6) is GRANTED for Plaintiff's Count I. Defendants' Motion to Dismiss under Indiana Trial Rule 12(B)(6); [sic] and, for Plaintiff's Count II, III, and IV is DENIED in part as to dismissal of the action; and is GRANTED in part so far as it is treated as a Motion for a More Definite Statement under Indiana Trial Rule 12(E).

Id. at 69.

On March 13, Duty filed her second amended complaint. And on March 28, BGC and Leer filed a joint motion to dismiss Duty's second amended complaint for failure to

3

state a claim upon which relief can be granted. Following a hearing, the trial court granted the defendants' motion to dismiss with prejudice. This appeal ensued.

## DISCUSSION AND DECISION

Our review of a trial court's grant of a motion to dismiss under Trial Rule 12(B)(6) is de novo and requires no deference to the trial court's decision. Sims v. Beamer, 757 N.E.2d 1021, 1024 (Ind. Ct. App. 2001). "A motion to dismiss under Rule 12(B)(6) tests the legal sufficiency of a complaint: that is, whether the allegations in the complaint establish any set of circumstances under which a plaintiff would be entitled to relief." Trail v. Boys & Girls Clubs of NW Ind., 845 N.E.2d 130, 134 (Ind. 2006). "Thus, while we do not test the sufficiency of the facts alleged with regards to their adequacy to provide recovery, we do test their sufficiency with regards to whether or not they have stated some factual scenario in which a legally actionable injury has occurred." Id. When reviewing a Trial Rule 12(B)(6) motion to dismiss, we accept the facts alleged in the complaint as true and view the pleadings in a light most favorable to the nonmoving party and with every reasonable inference in the nonmoving party's favor. Id. We view motions to dismiss under Trial Rule 12(B)(6) "with disfavor because such motions undermine the policy of deciding causes of action on their merits." McQueen v. Fayette Cnty. Sch. Corp., 711 N.E.2d 62, 65 (Ind. Ct. App. 1999), trans. denied.

Further, under Indiana's notice pleading system, a pleading need not adopt a specific legal theory of recovery to be adhered to throughout the case. Shields v. Taylor, 976 N.E.2d 1237, 1244 (Ind. Ct. App. 2012). However, although Indiana's notice pleading rules do not require the complaint to state all elements of a cause of action, the

4

plaintiff must still plead the operative facts necessary to set forth an actionable claim. State v. Am. Family Voices, Inc., 898 N.E.2d 293, 296 (Ind. 2008).

Duty contends that the trial court erred when it dismissed her complaint because it states claims upon which relief can be granted, namely, wrongful discharge, tortious interference with a business relationship, and tortious interference with a contractual relationship.[2] We address the sufficiency of each of Duty's claims under Trial Rule 12(B)(6) in turn.

## Wrongful Discharge

As our supreme court explained in Orr v. Westminster Village North, Inc., 689 N.E.2d 712, 717-18 (Ind. 1997):

> If there is no definite or ascertainable term of employment, then the employment is at-will, and is presumptively terminable at any time, with or without cause, by either party.

> * * *

> This Court has recognized only three ways to avoid or rebut the presumption of at-will employment, or stated another way, three exceptions to the employment-at-will doctrine. First, if an employee establishes that "adequate independent consideration" supports the employment contract, the Court generally will conclude that the parties intended to establish a relationship in which the employer may terminate the employee only for good cause. . . .

> Second, we have recognized a public policy exception to the employment-at-will doctrine if a clear statutory expression of a right or duty is contravened. . . .

---

[2] In her brief on appeal, Duty states that "the trial court's dismissal of [the disparagement count in her second amended complaint] is not assigned as error, but the [court's order] should not preclude disparagement as an element of damages subject to the burden of proof." Appellant's Br. at 12. Accordingly, we need not address whether the trial court erred when it dismissed Count IV of Duty's second amended complaint.

Third, this Court has recognized that, in certain instances, an employee may invoke the doctrine of promissory estoppel. . . .

Duty contends that, while an at-will employee generally has no cause of action for wrongful discharge, her claim against BGC falls under an additional exception to that general rule as stated in Orr, namely, a "mandatory procedures" exception. In particular, Duty maintains that "a mandatory provision, i.e. [BGC's Employee] Handbook creates a right in [BGC] by creating a duty in the employee, because of the whistleblower provision, to act. The corollary to the mandatory action required of the employee is [BGC's] representation there will be no retaliation." Appellant's Br. at 10. In sum, Duty asserts that "the [Employee] Handbook creates mutual obligations and rights and therefore would come under the Orr exception ('mandatory procedures')." Id.

But Duty mischaracterizes our supreme court's holding in Orr. In that case, the court explicitly declined the plaintiffs' invitation to recognize "a broad new exception to the at-will doctrine for employee handbooks." Orr, 689 N.E.2d at 719. Rather, in dicta, our supreme court stated as follows:

> [P]laintiffs urge us to establish a broad new exception to the at-will doctrine for employee handbooks. We are aware that there has been substantial criticism of the at-will doctrine and a significant amount of commentary and litigation regarding whether employee handbooks constitute valid contracts and, if so, under what circumstances. We are also aware that this Court has not expressly addressed and resolved the question of whether unilateral contracts in the employment context always require adequate independent consideration and whether an employee handbook can ever constitute a unilateral contract serving to modify the otherwise at-will employment relationship. See Wior v. Anchor Industries, Inc., 669 N.E.2d at 175-78, n.6; Streckfus v. Gardenside Terrace Co–Op., Inc., 504 N.E.2d at 276. Nevertheless, we decline plaintiffs' invitation to use this case as a vehicle for resolving these questions.

6

Even if we were to conclude that an employee handbook, under some circumstances, can constitute a valid unilateral contract in the absence of adequate independent consideration—and we do not do so today—Westminster's Handbook could not constitute such a unilateral contract and, in fact, cannot meet the requirements set forth in Duldulao v. Saint Mary of Nazareth Hosp. Center, 115 Ill.2d 482, 106 Ill.Dec. 8, 12, 505 N.E.2d 314, 318 (1987), upon which plaintiffs primarily rely while urging the Court to create a handbook exception to the employment-at-will doctrine.

Under the Duldulao rule, an employee handbook may constitute a unilateral contract and bind the employer if the following three criteria are met: (1) the language of the employee handbook must contain "a promise clear enough that an employee would reasonably believe that an offer had been made;" (2) the employee handbook must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer; and (3) the employee must accept the offer by commencing or continuing work after learning of the terms of the employee handbook. Id. . . .

. . . [But] the [Westminster] Handbook also contains a disclaimer, which is placed towards the front of the Handbook and which clearly states that the Handbook is not a contract and that its terms can be changed at any time. A similar disclaimer is included in the Personnel Handbook Statement which accompanied, and was referenced in, the Handbook and which Westminster required plaintiffs to sign. Again, even under the Duldulao rule, an employee handbook bearing or accompanied by such disclaimers, particularly when the employee signs one of the disclaimers, generally, as a matter of law, does not create a unilateral contract.

Id. at 719-21 (emphases added).

Here, we likewise decline Duty's invitation to recognize a mandatory procedures exception to the employment at-will doctrine. And, like the handbook in Orr, the BGC employee handbook[3] includes the following disclaimer:

NOTHING CONTAINED WITHIN THIS EMPLOYEE HANDBOOK IS INTENDED TO CREATE A CONTRACT FOR EMPLOYMENT, EXPRESS OR IMPLIED, NOR A GUARANTEE OF CONTINUED

---

[3] Duty attached to her complaint portions of BGC's employee handbook as Exhibit 1. Under Trial Rule 10(C), "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."

7

EMPLOYMENT FOR A SPECIFIC DURATION. THE EMPLOYEE AGREES THAT EMPLOYMENT WITH THE CLUB IS AT-WILL. THE CLUB MAY DISCHARGE AN EMPLOYEE AT ANY TIME, FOR ANY REASON WHATSOEVER, WITH OR WITHOUT CAUSE, AND WITH OR WITHOUT NOTICE. NOTHING WITHIN THIS HANDBOOK OR WITH THE CLUB'S POLICIES, PRACTICES, OR PROCEDURES IS INTENDED TO CREATE A CONTRACT FOR EMPLOYMENT, EXPRESS OR IMPLIED, OR A GUARANTEE O[F] CONTINUED EMPLOYMENT FOR A SPECIFIC DURATION.

Appellant's App. at 46 (emphasis original). Thus, even under Duldulao, which is not binding precedent in Indiana, the BGC employee handbook does not create a unilateral contract.

Duty has not demonstrated that the factual scenario alleged in her complaint correlates to a claim under an exception to the employment at will doctrine. See Trail, 845 N.E.2d at 134. The trial court did not err when it dismissed that claim.

<u>Tortious Interference with a Contractual Relationship</u>

Duty next contends that the trial court erred when it dismissed her claim alleging that Leer tortiously interfered with her contractual relationship with BGC. "'Indiana has long recognized that intentional interference with a contract is an actionable tort, and includes an intentional, unjustified interference by third parties with an employment contract.'" Drake v. Dickey, 2 N.E.3d 30, 34 (Ind. Ct. App. 2013) (quoting Winkler v. V.G. Reed & Sons, Inc., 638 N.E.2d 1228, 1234 (Ind. 1994)), summarily aff'd in relevant part, 12 N.E.3d 875 (Ind. 2014). This tort reflects the public policy that contract rights are property and, under proper circumstances, are entitled to enforcement and protection from those who tortiously interfere with those rights. Id. Tortious interference with a contractual relationship consists of the following elements: (1) that a valid and

8

enforceable contract exists; (2) the defendant's knowledge of the existence of the contract; (3) defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from defendant's wrongful inducement of the breach. Id. Further, our supreme court has held that

> [a]n employee with an at[-]will employment contract must be able to expect that his continued employment depends on the will of his employer and not upon the whim of a third party interferer. . . . [T]herefore[,] . . . a claim for tortious interference with an employment relationship can be maintained upon a contract terminable at will.

Bochnowski v. Peoples Fed. Sav. & Loan, 571 N.E.2d 282, 285 (Ind. 1991).

Here, the trial court found in relevant part that Duty's complaint "is not specific enough to know whether the conduct was wrongful for any type of tortious interference." Appellant's App. at 7. But Duty maintains that she alleged each element of this claim with sufficient specificity. In particular, Duty's second amended complaint includes the following allegations:

> 30.     At all relevant times up to and including the date her employment contract with [BGC] was terminated, Plaintiff had a valid and enforceable employment contract with [BGC].
>
> 31.     At all relevant times up to and including the date her employment contract with [BGC,] Charles R. Leer knew of and was aware of that employment relationship between Dawn Duty and [BGC].
>
> 32.     Charles R. Leer engaged in statements and conduct with his purpose and intention to persuade and induce [BGC], and particularly the individual who replaced him as interim chief executive officer[,] to terminate this Plaintiff as an employee of [BGC]. Plaintiff retains the right through discovery process to discover evidence in proof of the actions, words[,] and influence undertaken by Charles Leer in interference with Plaintiff's employment relationship with [BGC] and asserts she has a reasonable basis for these allegations. Plaintiff asserts her right to conduct discovery to develop and solidify by discovery her allegations.

9

33. The actions of Charles Leer were his knowing interference with the employment relationship he knew existed between Plaintiff and [BGC] and were done without justification and in retaliation for Plaintiff's invocation of the Whistleblower policy of [BGC] with the intention to induce [BGC] to terminate its employment of Plaintiff.

34. Charles Leer lacked justification for his interference with the relationship and contract between [BGC] and Plaintiff.

35. The actions of Charles R. Leer were vindictive against Plaintiff for what he thought were damaging [sic] to his reputation and tortious interference with Plaintiff's advantageous employment relationship.

36. Dawn Duty has been damaged by these wrongful actions of Charles R. Leer.

Appellant's App. at 77-78 (emphases added).

In their brief on appeal, BGC and Leer maintain that Duty "failed to specify the wrongful conduct" by Leer and made only a conclusory statement that Leer lacked justification for his alleged conduct, which, they contend, is insufficient. Appellees' Br. at 21. BGC and Leer do not allege that Duty's claim is insufficient with respect to any of the other elements of her claim. BGC and Leer are correct that a plaintiff must state more than a mere assertion that the defendant's conduct was unjustified. See Morgan Asset Holding Corp. v. CoBank, ACB, 736 N.E.2d 1268, 1272 (Ind. Ct. App. 2000). To satisfy the element of lack of justification, the breach must be malicious and exclusively directed to the injury and damage of another. Id. (citing Winkler, 619 N.E.2d at 600-01).

But our reading of Duty's allegations reveals that they are sufficiently specific regarding Leer's alleged wrongful and unjustified conduct. First, paragraph 32 of Duty's second amended complaint alleges that Leer "engaged in statements and conduct with [the] purpose and intent[] to persuade and induce [BGC] . . . to terminate [Duty] as an

10

employee of [BGC]." Appellant's App. at 77. Under notice pleading, Duty does not have to describe those statements and conduct with more specificity than that. See Trail, 845 N.E.2d at 134. Moreover, Duty alleges that Leer's statements and conduct were "in retaliation for [her] invocation of the Whistleblower policy of [BGC] with the intent[] to induce [BGC] to terminate its employment of [Duty]" and that Leer's actions were "vindictive against [Duty] for what he thought were damaging [sic] to his reputation[.]" Id. at 77-78. Vindictiveness is, by its nature, malicious. Thus, Duty has pleaded facts sufficient to show that the alleged breach was malicious and exclusively directed to the injury and damage of Duty. See Morgan, 736 N.E.2d at 1272. Applying the standard when reviewing a motion to dismiss under Trial Rule 12(B)(6), we hold that Duty has stated a claim upon which relief can be granted for tortious interference with a contractual relationship.[4]

**Conclusion**

The trial court did not err when it dismissed Duty's claim against BGC alleging wrongful discharge. But the trial court erred when it dismissed Duty's claim against Leer alleging tortious interference with a contractual relationship. Duty may proceed with that claim on remand.

Affirmed in part, reversed in part, and remanded for further proceedings.

MATHIAS, J., and BRADFORD, J., concur.

---

[4] In her brief on appeal, Duty states that, should we reverse the trial court's dismissal of her tortious interference with a contractual relationship claim, "dismissal [of her tortious interference with a business relationship claim] as an alternate theory could be considered moot." Appellant's Br. at 19. Thus, we do not address that claim.

11