


FILED

Apr 24 2025, 3:21 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 24S-CQ-265

## Diamond Quality, Inc.,

*Plaintiff,*

—v—

## Dana Light Axle Products, LLC

*Defendant.*

Argued: December 5, 2024 | Decided: April 24, 2025

Certified Question from the United States District Court
For the Northern District of Indiana
Chief Judge Holly A. Brady
No. 1:22-cv-114-HAB

**Opinion by Justice Slaughter**

Chief Justice Rush and Justices Massa and Molter concur.
Justice Goff dissents with separate opinion.

**Slaughter, Justice.**

We accepted two certified questions from the Northern District of Indiana in August 2024. The district court's certified questions were based on what the court said is a dispositive issue of Indiana law. Because we find a different issue of our state's tort law dispositive, we restate the questions as one:

> Does a property owner act without justification (or engage in wrongful or illegal conduct), for purposes of a claim for tortious interference with a contractual or business relationship, when the property owner bars a plaintiff from accessing the owner's property?

We hold the answer is "no". Absent a contractual or statutory duty, a property owner is always justified in excluding another from the owner's premises.

I

A

Diamond Quality, Inc., the plaintiff, is an industrial inspection and sorting company located in Allen County, Indiana. Since 2014, some of Diamond's largest clients were three subsidiaries wholly owned by Dana Incorporated: Dana AMSA, Dana ETRAC, and Dana Light Axle Products, LLC. The last of these, Dana Light Axle Products, is located in Fort Wayne, Indiana, and we refer to it as Dana Fort Wayne. Dana AMSA and Dana ETRAC are based in Mexico and supply automotive parts to Dana Fort Wayne. Dana Fort Wayne refines these parts before shipping them to other Dana facilities.

When Diamond worked with the Dana companies, it would (among other things) sort through faulty parts to trace which subsidiary was responsible for the defective part. Whichever subsidiary Diamond found responsible had to bear the costs associated with the defective part. But in 2019, for reasons the parties dispute, Dana Fort Wayne stopped using Diamond to sort faulty parts.

The dispute here arose when Dana Fort Wayne, after it stopped hiring Diamond, twice refused to permit Diamond onto its premises to sort faulty parts. In February 2020, Dana Fort Wayne received several defective parts from Dana ETRAC. Dana Fort Wayne hired a third-party company in lieu of Diamond to sort through the parts. But Dana ETRAC wanted Diamond to sort the defective parts at Dana Fort Wayne's facility. When Diamond arrived at the facility to inspect parts, Dana Fort Wayne refused Diamond entry onto the premises. The same thing happened in March. Dana AMSA asked Diamond to sort parts located on Dana Fort Wayne's premises, but Dana Fort Wayne used its own third-party sorter and refused Diamond entry onto its premises.

B

Diamond sued Dana Fort Wayne in state court in Allen County asserting two claims. First, it alleged that Dana Fort Wayne tortiously interfered with Diamond's business relationships with the Dana subsidiaries in Mexico "by prohibiting Diamond . . . from performing work for [the subsidiaries] at Dana Fort Wayne's facility." Dana Fort Wayne, according to Diamond, "acted illegally or wrongfully in preventing Diamond" from entering Dana Fort Wayne's premises. Second, Diamond alleged Dana Fort Wayne's conduct tortiously interfered with Diamond's contracts with the subsidiaries in Mexico. Again, in Diamond's view, Dana Fort Wayne "had no justification for barring Diamond" from Dana Fort Wayne's premises, and its doing so was illegal and wrongful.

Before answering the complaint, Dana Fort Wayne removed the suit to the United States District Court for the Northern District of Indiana. Then, in its answer, Dana Fort Wayne denied tortiously interfering with either Diamond's business relationships or its contracts with the subsidiaries in Mexico. Though Dana Fort Wayne admitted barring Diamond from its premises, Dana Fort Wayne denied doing so illegally, wrongfully, or without justification.

After discovery, Dana Fort Wayne moved for summary judgment. Relevant here, it argued that Diamond's claims fail because the acts complained of—twice barring Diamond from its premises—were not tortious. Even Diamond agreed that Dana Fort Wayne "could exclude whomever it

wished from its private property" and that this "right to protect private property is fundamental to our system of laws". But Diamond nevertheless insisted that this "right ends when it tortiously interferes in another company's business relationship".

After reviewing the parties' summary-judgment papers, the district court ordered supplemental briefing on a different issue: under Indiana law, "can one corporate subsidiary tortiously interfere with the contracts and business relationships of another corporate subsidiary when both subsidiaries are owned by the same corporate parent?" After reviewing the parties' supplemental briefs, the court determined "there is no controlling Indiana precedent" addressing its question. Because "resolution of the question is outcome-determinative", the court certified two questions to us:

(1) May a plaintiff bring a claim for tortious interference with contractual and business relationships when the party induced to breach is a subsidiary of the same corporate parent as the defendant?

(2) If so, what is the scope of those claims, and what factors should the Court consider in determining liability?

The district court invited us to reframe these questions if we conclude "that course is appropriate". It added: "Nothing in this certification is intended to limit the scope of [our] inquiry."

We accepted the certified questions and set a briefing schedule. Ind. Appellate Rule 64(B). The parties' briefs addressed how existing Indiana law applies here, and whether and to what extent we should immunize a corporate subsidiary from a claim that it interfered with its sister subsidiary's contract or business relationship. After oral argument, we asked the parties to file supplemental briefs addressing (1) whether this Court should adopt the Restatement (Third) of Torts: Liab. for Econ. Harm §§ 17–18 (2020), to govern Diamond's claims against Dana Fort Wayne, and (2) how the third restatement would apply here. We thank the parties for their submissions.

## II

The two questions the district court certified are issues of first impression in Indiana. Answering them would require new doctrine straddling this State's corporate and tort law. Rather than alter old doctrine or announce new doctrine, we pursue a simpler path, reframing the two questions as one:

> Does a property owner act without justification (or engage in wrongful or illegal conduct), for purposes of a claim for tortious interference with a contractual or business relationship, when the property owner bars a plaintiff from accessing the owner's property?

We hold the answer is "no" and explain our answer in two steps. First, we outline the current standard for tortious-interference claims in Indiana. Second, we announce a per se rule that, absent a contractual or statutory duty, a property owner is always justified in excluding another from the owner's premises.

## A

Prevailing tortious-interference law in Indiana is based on the second restatement of torts. To bring a claim for tortious interference with a contract in Indiana, a plaintiff must prove five elements, including that the defendant acted without "justification":

(1) a valid and enforceable contract existed;
(2) defendant knew the contract existed;
(3) defendant intentionally induced a breach of the contract;
(4) defendant lacked **justification** for inducing the breach; and
(5) defendant's unjustified inducement of the breach caused the plaintiff to suffer damages.

*Am. Consulting, Inc. v. Hannum Wagle & Cline Eng'g, Inc.*, 136 N.E.3d 208, 214 (Ind. 2019). Likewise, a claim for tortious interference with business relationship requires the plaintiff to show the defendant committed "some independent illegal action." *Brazauskas v. Fort Wayne-South Bend Diocese, Inc.*, 796 N.E.2d 286, 291 (Ind. 2003).

Often, a tortious-interference claim turns on whether the defendant acted without justification or committed an illegal act. Our courts balance seven factors to determine whether the defendant acted without "justification":

(1) the nature of the defendant's conduct;
(2) the defendant's motive;
(3) the interests of the plaintiff with which the defendant's conduct interferes;
(4) the interests the defendant seeks to advance;
(5) the social interests in protecting the defendant's freedom of action and the plaintiff's contractual interests;
(6) the proximity or remoteness of the defendant's conduct to the interference; and
(7) the relations between the parties.

*Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1235 (Ind. 1994) (quoting Restatement (Second) of Torts § 767 (1977)). Besides these seven factors, our intermediate appellate court has suggested that a defendant's acts are not justified—and thus are tortious—when "the breach [is] malicious and exclusively directed to the injury and damage of another." *Morgan Asset Holding Corp. v. CoBank, ACB*, 736 N.E.2d 1268, 1272 (Ind. Ct. App. 2000) (citations omitted).

Like the "justification" requirement in the second restatement, the third restatement requires the plaintiff to show the defendant engaged in "wrongful conduct" to prove tortious interference with a contractual relationship. Restatement (Third) of Torts § 17, *supra*, at 4. And to prove interference with an "economic expectation"—the third restatement's parlance for a "business relationship"—the plaintiff must show (among other things) that the defendant committed a "legal wrong". *Id.* § 18.

Here, Diamond complains of being refused entry onto Dana Fort Wayne's premises. Dana Fort Wayne admits denying Diamond entry onto its premises but says it was entitled to do so.

## B

We hold that Dana Fort Wayne is correct under either version of the restatement. Indiana law protects a property owner's right to exclude others from its premises. With exclusive possession of property comes "the right to exclude all others" from the property. *Barnes v. Born*, 30 N.E. 509, 510 (Ind. 1892). "One of the time-honored principles of property law is the absolute and unconditional right of private property owners to exclude from their domain those entering without permission." *Donovan v. Grand Victoria Casino & Resort, L.P.*, 934 N.E.2d 1111, 1113 (Ind. 2010). Indeed, our legislature treats unauthorized entry onto another's premises as "criminal trespass" absent "a contractual interest in the property". Ind. Code § 35-43-2-2(b)(1).

Indiana law mirrors fundamental property-law principles going back centuries. "The right to exclude is one of the most treasured rights of property ownership." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 149 (2021) (cleaned up). The right to exclude is "universally held to be a fundamental element of the property right" and is "one of the most essential sticks in the bundle of rights that are commonly characterized as property". *Kaiser Aetna v. United States*, 444 U.S. 164, 176, 179–80 (1979). Sir William Blackstone is even more emphatic. He describes a property right as "that sole and despotic dominion which one man claims and exercises over the external things of the world, in total exclusion of the right of any other individual in the universe." 2 W. Blackstone, *Commentaries on the Laws of England* 2 (1766).

These authorities show that a property owner has an absolute right to exclude others from its property. Of course, a property owner may permit anyone it wishes to enter its property. Such permission may be conferred by contract between owner and entrant. And civil-rights laws may limit a commercial enterprise's right to exclude, at least insofar as the enterprise has opened its property to the public yet seeks to exclude some on the basis of a protected status. But absent a contractual or statutory duty, a landowner is entitled to deny entry onto its premises for any reason or no reason at all. Since exercising the right to exclude is not "unjustified", "wrongful", or illegal, this conduct cannot support a claim for tortious

interference under Indiana law. This case does not require us to choose between the second and third restatements. So we leave for another day whether to adopt the third restatement, or some other test, to govern claims for tortious interference.

Finally, Justice Goff says in dissent that, by reframing the district court's certified question, we run the "risk" of "issuing an improper advisory opinion". *Post*, at 3. Yet he also says we have "effectively taken and decided" this case. *Id.* at 4. Both critiques cannot be right. Yes, we are deciding a dispositive issue of Indiana tort law affecting the parties before us. But that means our opinion is not "advisory".

\* \* \*

For these reasons, the answer to our reframed certified question is "no".

Rush, C.J., and Massa and Molter, JJ., concur.
Goff, J., dissents with separate opinion.

ATTORNEYS FOR PLAINTIFF DIAMOND QUALITY, INC.
Craig R. Patterson
Noah W. Vancina
Beckman Lawson, LLP
Fort Wayne, Indiana

ATTORNEYS FOR DEFENDANT DANA LIGHT AXLE PRODUCTS, LLC
Kathleen M. Anderson
Zachary L. Barron
Barnes & Thornburg LLP
Fort Wayne, Indiana

**Goff, J., dissenting.**

Dana Light Axle Products, LLC (Dana Fort Wayne), and Dana AMSA and Dana ETRAC (Dana Suppliers) are subsidiaries of Dana, Inc., a corporation that makes automotive parts. The Dana Suppliers send parts they cast to Dana Fort Wayne. Dana Suppliers contract with Diamond Quality, Inc., to sort nonconforming parts at the Dana Fort Wayne facility and allocate costs to either Dana Fort Wayne or the Dana Suppliers depending on who was at fault for the nonconformity. But when Dana Fort Wayne would not permit Diamond Quality to enter its facility, Diamond Quality sued Dana Fort Wayne in state court in Allen County for tortiously interfering with its contractual and business relationship with the Dana Suppliers. The case was removed to the United States District Court for the Northern District of Indiana.

Federal courts are often asked to determine matters of state law. Our court rules allow a federal court to "certify a question of Indiana law" to this Court "when it appears to the federal court that a proceeding presents an issue of state law that is determinative of the case and on which there is no clear controlling Indiana precedent." Ind. Appellate Rule 64(A). The Northern District certified the following questions to this Court: (1) whether a plaintiff may "bring a claim for tortious interference with contractual and business relationships when the party induced to breach is a subsidiary of the same corporate parent as the defendant," and (2) if so, "what is the scope of those claims, and what factors should the Court consider in determining liability?" *Ante*, at 4. The Court reframes the questions and holds that, "absent a contractual or statutory duty, a property owner is always justified in excluding another from the owner's premises." *Id.* at 5.

Our acceptance of this—or any—certified question is discretionary, requiring us to weigh the benefits (*e.g.*, ensuring uniform interpretation and application of Indiana law) against "significant pitfalls" (*e.g.*, lack of a fully developed factual record). *Snyder v. King*, 958 N.E.2d 764, 788 (Ind. 2011). Here, in my view, the pitfalls outweigh the benefits. Accordingly, I would decline to exercise our discretion. But because we have accepted the certified questions, I would hold that (1) a plaintiff may bring a claim

for tortious interference with contractual and business relationships when a defendant has allegedly induced its own sister subsidiary to breach if the subsidiaries are not united in interest, and (2) the Restatement (Second) of Torts § 767 applies when determining whether a defendant is "justified" in interfering with a contract.

## I. The procedural posture, existence of controlling precedent, and reframing of the questions make the certified questions inappropriate for our review.

There are several reasons why, in my view, answering the certified questions here is inappropriate.

To begin with, I believe the procedural posture of this case renders our role premature. A case coming to this Court directly from a federal district court, rather than through the lens of an appellate court, often has issues and arguments that "are not as well defined or as focused." *W. Helicopter Servs., Inc. v. Rogerson Aircraft Corp.*, 811 P.2d 627, 633 (Or. 1991). In the summary-judgment proceedings here, for example, there's an open question as to whether there was an enforceable contract between Diamond Quality and the Dana Suppliers and, if so, whether Dana Fort Wayne was also a party to that contract. *See Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1235 (Ind. 1994) (holding that the first element of tortious interference with contractual and business relationships is the "existence of a valid and enforceable contract"); *Trail v. Boys & Girls Clubs of Nw. Ind.*, 845 N.E.2d 130, 138 (Ind. 2006) (concluding that "[a] party cannot 'interfere' with its own contracts, so the tort itself can be committed only by a third party"). Because these issues may be dispositive of the case, I would prefer to let the case progress before addressing a certified question that doesn't necessarily need to be answered. *Cf. Snyder*, 958 N.E.2d at 788 (citing the absence of a record and the lack of fully developed issues as reasons rendering review difficult); *see also* Hon. Randall T. Shepard, *Is Making State Constitutional Law Through Certified Questions a Good Idea or a Bad Idea?*, 38 Val. U. L. Rev. 327, 343

(2004) (citing insufficient factual records, inadequate briefing or oral argument, unresolved factual disputes, and abstract and isolated issues as potential "impediments to successfully certifying a question").

Second, accepting a certified question is appropriate when there is no controlling precedent. *See* App. R. 64(A). The second certified question asks what factors the court should consider in determining liability. But here, our decision in *Winkler* controls. In that case, we set forth the elements of tortious interference with contractual and business relationships in Indiana and adopted the Restatement (Second) § 767 which lists the factors to consider when determining whether an interference is justified. *See infra*, II B.

Finally, the Court, in my opinion, has exceeded its role by reframing the certified question. Rather than addressing the question as originally posed by the Northern District, the Court now asks whether a "property owner act[s] without justification (or engage[s] in wrongful or illegal conduct), for purposes of a claim for tortious interference with a contractual or business relationship, when the property owner bars a plaintiff from accessing the owner's property," and answers "no." *Ante*, at 5. Although we have discretion to reframe a certified question, *see, e.g.*, *Snyder*, 958 N.E.2d at 769, and although the Northern District invited us to do so here, we should exercise that discretion with care and reserve, perhaps in "consultation with the certifying court," *W. Helicopter Servs.*, 811 P.2d at 633–34. I emphasize this point because "reforming the question in a manner more consistent with state law or at least in state-specific terminology seems to be one step further away from the live controversy," leading to a risk of this Court issuing an improper advisory opinion. Shepard, *supra*, at 346.

Whatever our approach, we should be mindful of the limited role we play: an "answer to a certified question simply 'advises' the federal court on an issue of Indiana law, and it may or may not be dispositive of the entire case." *Snyder*, 958 N.E.2d at 787. By reframing the issues, the Court has adopted a per se rule that takes the fact-sensitive issue of justification away from the trial court in this case. The Court, in my view, has

effectively taken and decided the case without the full record rather than simply answering the questions the Northern District asked.

For these reasons, I would not have accepted the certified questions. The certification process "furthers the interests associated with judicial federalism" by giving "the state judiciary the opportunity to rule on important issues of state law in cases in which it might not otherwise have had the chance." Jonathan Remy Nash, *Examining the Power of Federal Courts to Certify Questions of State Law*, 88 Cornell L. Rev. 1672, 1697 (2003). But when the "issue is not within the certified questions and is within the province of the federal court," it is no longer our role to decide the issue. *See Greenberg v. Amazon.com, Inc.*, 553 P.3d 626, 646 (Wash. 2024). I would have instead allowed the case to further progress and the record to fully develop, perhaps to the Seventh Circuit Court of Appeals, before accepting the certified questions.

## II. A defendant corporation can tortiously interfere with its sister subsidiary, and the Restatement (Second) of Torts § 767 applies.

Having accepted the certified questions, I would hold that a plaintiff may bring a claim for tortious interference with contractual and business relationships when the party induced to breach is a subsidiary of the same corporate parent as the defendant if the sister subsidiaries are not aligned in interest. I would also hold that the Restatement (Second) of Torts § 767 factors apply to determine if an interference is justified.

### A. A defendant subsidiary can tortiously interfere with its sister subsidiary's contract if the subsidiaries do not have "unity of interest."

In my view, a defendant subsidiary can tortiously interfere with its sister subsidiary because they may not have "unity of interest."

In *Copperweld Corp. v. Independence Tube Corp.*, the U.S. Supreme Court held that parents and subsidiaries cannot conspire for purposes of the

Sherman Antitrust Act because they have "complete unity of interest." 467 U.S. 752, 771 (1984). A parent and subsidiary "are not unlike a multiple team of horses drawing a vehicle under the control of a single driver. With or without formal 'agreement,' the subsidiary acts for the benefit of the parent, its sole shareholder." *Id.* Other jurisdictions have adopted the reasoning of *Copperweld* to hold that a parent cannot be liable for tortious interference because parents and subsidiaries have complete unity of interest. *See, e.g., Waste Conversion Sys., Inc. v. Greenstone Indus., Inc.*, 33 S.W.3d 779, 782 (Tenn. 2000); *MGP Ingredients, Inc. v. Mars, Inc.*, 465 F. Supp. 2d 1109, 1113–14 (D. Kan. 2006); *Sparkman v. Consol Energy, Inc.*, 571 S.W.3d 569, 572 (Ky. 2019).

In contrast, sister subsidiaries may not have the same interests. In this case, there is evidence that Dana Fort Wayne and the Dana Suppliers had some similar interests such as saving their parent corporation's money and building parts for the same supply chain. On the other hand, Diamond Quality's work involved allocating charge-back costs between Dana Fort Wayne and the Dana Suppliers. Diamond Quality argues that Dana Fort Wayne wanted it off the sorting jobs to allocate more of those costs to the Dana Suppliers. While that allocation may not have mattered to Dana, Inc., the parent company, the allocation appears to have mattered very much to the subsidiaries. This is at least one example of sister subsidiaries not having complete "unity of interest."

I would have the Northern District determine as a factual matter whether Dana Fort Wayne and the Dana Suppliers have such unity of interest that Dana Fort Wayne cannot tortiously interfere with the Dana Suppliers. If they do not have unity of interest, Diamond Quality can proceed with its claim for tortious interference.

## B. The factors in the Restatement (Second) of Torts § 767 apply when determining if an interference is justified.

This Court has adopted a flexible standard from the Restatement (Second) of Torts § 767 to determine if an interference is justified.

In *Winkler*, we set forth the elements of tortious interference in Indiana: (1) existence of a valid and enforceable contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from defendant's wrongful inducement of the breach. 638 N.E.2d at 1235 (citing *Daily v. Nau*, 339 N.E.2d 71, 76 n.6 (Ind. Ct. App. 1975)). For the fourth element, justification, this Court adopted the Restatement (Second) of Torts § 767 which has seven factors for courts to consider when determining if interference with a contract was justified:

(a) the nature of the defendant's conduct;

(b) the defendant's motive;

(c) the interests of the plaintiff with which the defendant's conduct interferes;

(d) the interests sought to be advanced by the defendant;

(e) the social interests in protecting the freedom of action of the defendant and the contractual interests of the plaintiff;

(f) the proximity or remoteness of the defendant's conduct to the interference; and

(g) the relations between the parties.

*Id.* (citing Restatement (Second) of Torts § 767 (1977)).

I would have the Northern District apply this test to determine if Dana Fort Wayne's alleged interference was justified. Considering "the relations between the parties" as sister subsidiaries of the same corporation, and "the defendant's motive" and "interests" in protecting its own property, the Northern District may have concluded for itself that Dana Fort Wayne was justified in excluding Diamond Quality from its facility. Instead, the Court has unnecessarily adopted a hard rule that "absent a contractual or statutory duty, a property owner is *always* justified in excluding another from the owner's premises." *Ante*, at 5 (emphasis added). We should allow the Northern District to develop the full record and decide this fact-sensitive issue using the Restatement factors.