

ATTORNEYS FOR APPELLANT

P. Frederick Pfenninger
Tara Lynn Gerber
Pfenninger & Associates
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
ROBIN J. BROOKS

Alexander P. Pinegar
Ryan G. Liffrig
Church, Church, Hittle & Antrim
Noblesville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Yellow Book Sales and
Distribution Company, Inc.,

*Appellant-Plaintiff,*

v.

JB McCoy Masonry Inc.[1] and
Robin J. Brooks,

*Appellees-Defendants.*

December 10, 2015

Court of Appeals Case No.
29A04-1504-CC-151

Appeal from the Hamilton
Superior Court

The Honorable
J. Richard Campbell, Judge
The Honorable
William P. Greenaway, Magistrate

Trial Court Cause No.
29D04-1010-CC-2516

**Kirsch, Judge.**

---

[1] Although a default judgment was entered against JB McCoy Masonry Inc., the company is not seeking relief on appeal. Pursuant to Indiana Appellate Rule 17(A), however, a party of record in the trial court is a party on appeal.

Following a bench trial, the trial court denied Yellow Book Sales and Distribution Company, Inc.'s ("Yellow Book") breach of contract claim seeking relief against Robin J. Brooks ("Brooks) for the unpaid balance on an advertising contract. Brooks had signed the contract as "Owner" of JB McCoy Masonry Inc. ("McCoy Masonry"), the company identified in the contract as "Customer." Yellow Book appeals, raising the following consolidated and restated issue: whether the trial court erred in holding that Brooks was not personally liable to Yellow Book for the amount still owed by McCoy Masonry under the contract.

We reverse and remand.

## Facts and Procedural History

On April 18, 2007, McCoy Masonry entered into a one-sheet, fill-in-the-blanks form contract ("the Contract") with Yellow Book to buy a year of advertising in the phonebooks distributed to the Greater Indianapolis Area, Hamilton County, and Johnson County. For this advertising, McCoy Masonry agreed to pay $2,629 per month for twelve months. *Appellant's App.* at 25. McCoy Masonry was listed as the sole "Customer" at the top of the Contract. *Id*. Further, in the area of the Contract pertaining to "Customer Information," Brooks and Jason McCoy were listed only as McCoy Masonry's "Contacts," and the email address listed in the Contract was one for McCoy Masonry. *Id*.

The Contract included language, in a block located at the bottom of the Contract, setting forth:

THIS CONSTITUTES A CONTRACT FOR ADVERTISING
WITH YELLOW BOOK SALES AND DISTRIBUTION
COMPANY, INC. OR TRANSWESTERN PUBLISHING
COMPANY LLC IN THE NEXT EDITION OF THE ABOVE
TELEPHONE DIRECTORY(IES) AND/OR FOR
INTERNET SERVICES, *THE TERMS AND CONDITIONS SET
FORTH HEREIN AND ON THE REVERSE HEREOF ARE
AGREED TO BY CUSTOMER AND SIGNER*.

*Id*. (emphasis added); *Tr*. at 24.

The signature area on the Contract was configured so that the words "JB McCoy Masonry, Inc." were written on the first line, labeled "Print Customer Name." *Appellant's App.* at 25. The signature "Robin J. Brooks," with the designated title of "Owner" was placed on the second line. Under that second line, in all capital letters and bold text, were the words, "**Authorized Signature Individually and for the Customer**." *Id*. Following that language, the words "(Read paragraph 15F on the reverse hereof)" were written in non-bold text and as a parenthetical. *Id*. On the third line, the words "Robin Brooks" were printed, with a number noted above the designation "Signer's SS # (required for new accounts or new signers)." *Id*.

The reverse side of the Contract set forth the "Terms and Conditions" ("Terms"). Section 15F of the Terms stated:

> F. *The signer agrees that he/she has the authority and is signing this agreement (1) in his/her individual capacity*, (2) as a representative of the Customer, and (3) as a representative of the entity identified in the advertisement or for whose benefit the advertisement is being purchased (if the entity identified in the advertisement is

not the same as the Customer or the signer). *By his/her execution of this agreement, the signer personally and individually undertakes and assumes, jointly and severally with the Customer, the full performance of this agreement, including payment of amounts due hereunder.*

*Id.* at 26 (emphasis added).

[7] Starting in August 2007, through and including May 2008, Yellow Book sent a monthly invoice to McCoy Masonry. Each invoice stated the updated balance due on the Contract and requested that the Customer pay either the balance in full or the stated portion of the outstanding debt. On October 20, 2010, Yellow Book filed a complaint against both McCoy Masonry and Brooks seeking recovery of damages arising from the breach of contract when McCoy Masonry failed to pay for the advertising provided pursuant to the Contract. As part of the complaint, and likely as explanation for including Brooks as a defendant, Yellow Book cited to the language in Paragraph 15F that the signer of the agreement "does, by his execution, personally and individually undertake and assume the full performance hereof including payments of amounts due hereunder." *Id.* at 19. Yellow Book obtained a default judgment against both McCoy Masonry and Brooks; however the default judgment was later set aside as to Brooks.

[8] A bench trial was held on February 11, 2015 to determine whether Brooks was personally liable for the amount due under the Contract. James Griffiths ("Griffiths"), an employee of Yellow Book, testified that the Contract was "a typical contract, at least at that time, that [Yellow Book] entered into to provide

advertising." *Tr.* at 8. Yellow Book provided the advertising as agreed.[2] *Id.* at 10. Griffiths also testified that monthly invoices requesting payment were sent to McCoy Masonry, "Attn: Jason McCoy/Robin Brooks," for the months of August 2007 through and including May 2008, but no payments were received. *Id.* at 12; *Plaintiff's Ex.* 3. Regarding the outstanding payments on the Contract, Griffiths stated that Yellow Book was owed $28,974 in principal plus interest calculated at 1.5% per month (18% per annum) for any payment not received after thirty days. *Tr.* at 11.[3]

[9] Yellow Book also sought attorney fees for the breach of contract. Accordingly, P. Frederick Pfenninger, counsel for Yellow Book, testified that, as of the date of trial, he had billed 38.9 hours to collect the outstanding amount due under the Contract. *Id.* at 20. Pfenninger recognized, "That is an excessive amount of time. But it is the time that we got in on this case."[4] *Id.* at 20. Pfenninger conceded that, although his current billing rate is $275 per hour, he would charge $250 per hour, which was his billing rate when the case commenced. *Id.* at 21.[5]

---

[2] A copy of the published advertising was introduced at trial as *Plaintiff's Exhibit* 2. *Tr.* at 14

[3] During the February 11, 2015 trial, Griffiths stated that he did not recall the exact figure of interest owed, but that he "calculated it the other day and it was in excess of $30,000." *Tr.* at 11. When asked to clarify, Griffiths said that the interest was calculated from February 29, 2009—the date of the "Statement of Account" that was attached to Yellow Book's Complaint as Exhibit B. *Appellant's App.* at 22.

[4] Brooks noted that the excessive amount of time spent was due, in part, to the trouble that Yellow Book had in locating both defendants, getting Brooks served, and pursuing post judgment proceedings." *Tr.* at 20-21.

[5] At trial, Brooks asserted that many of the billing hours charged by Yellow Book's counsel were not related to this action. Accordingly Brooks urged the trial court that attorney fees, if warranted, should be awarded to

[10] Brooks testified that McCoy Masonry was a company incorporated under the laws of the State of Indiana, and that she was owner of McCoy Masonry at the time the company entered into the Contract. *Id*. at 22. Brooks maintained that, except for her signature, she did not recognize the handwriting on the Contract; Brooks believed it was the handwriting of "someone from Yellow Book." *Id*. at 23. Over Yellow Book's objection, Brooks explained that it was her understanding that the word "Owner" after her signature, conveyed that she was acting as a representative, *i.e.*, Brooks believed she was "signing on behalf of the company." *Tr*. at 23, 26. When counsel for Brooks attempted to ask her whether she intended to make herself personally liable when she executed the Contract, Yellow Book's counsel objected, arguing that the Contract "is clear on its face and unambiguous." *Id*. at 26. The trial court agreed, noting, "I think at this point—I mean the contract says what the contract says. So I think unless we can establish some kind of fraud, if that is where you are going to, I will allow it. But the contract clearly says what the contract says." *Id*.

[11] When the questioning continued, Brooks testified that she did not read the reverse side of the Contract, *i.e.*, the Terms. Brooks also stated that she did not recall Yellow Book providing any explanation "with respect to what was on the back and what the language meant underneath [her] signature." *Id*. at 27. Brooks "believe[d]" this was the first contract McCoy Masonry had entered

---

Yellow Book only for those billing hours performed in connection with the pursuit of Brooks's personal liability. The trial court, having found that Brooks was not personally liable under the Contract, did not reach the issue of attorney fees. On remand, we direct the trial court to address this issue.

into with Yellow Book and noted that, while the Contract requested Social Security Number for new accounts, it should have been clear to Yellow Book that the number provided was not Brooks's Social Security Number, but likely McCoy Masonry's Federal Identification Number. *Id*. at 28

[12] During closing argument, the trial judge asked Brooks's counsel, "Real quick. How is it ambiguous? I mean I understand your client saying, well I didn't think it said what it said. But as far as the face of the document it does not appear to be ambiguous." *Id*. at 31-32. Defense counsel responded, "Okay, if the Court believes it is not ambiguous, my argument would be the [C]ustomer is listed as JB McCoy Masonry, Inc. The fact that the owner is written there, it becomes part of the Contract once it is written there. That creates an ambiguity." *Id*. at 32. Clarifying his position, defense counsel argued that the language inside the block of the Contract specifically stated that Yellow Book was contracting with the Customer. Defense counsel maintained that, because Brooks was not the Customer, she should not be held personally liable under the Contract. Defense counsel also argued, seemingly for the first time, that Yellow Book had entered into two agreements under the Contract, one with McCoy Masonry and the other with Brooks as a guarantee under the Contract. Noting that Brooks had only signed the Contract as a representative of McCoy Masonry, Brooks's counsel argued that the guarantee was not valid.[6]

---

[6] At trial Brooks maintained that she had only recently learned of this suit to hold her personally liable. Accordingly, she claimed that interest, if warranted, should not be charged against her for the full five or six

The trial court took the matter under advisement and, thereafter, entered judgment in favor of Brooks. The trial court concluded: (1) Brooks was not liable as a guarantor because the Contract contained no language creating a conditional promise to pay; and (2) Brooks was not liable because the Contract was ambiguous concerning whether Brooks signed only on behalf of McCoy Masonry or also agreed to be personally liable, that such ambiguity should be construed against Yellow Book (the drafter of the Contract), and parole evidence—that Brooks did not intend to be personally liable—was admissible. *Appellant's App.* at 14-17. Yellow Book now appeals.

## Discussion and Decision

Yellow Book contends that the trial court erred in finding that Brooks was not personally liable for the balance due on the Contract. Specifically, Yellow Book argues that the trial court should have given effect to the intent of the parties as reflected in the plain and unambiguous language of the Contract. Because Yellow Book did not prevail at trial, it appeals from a negative judgment. *See Smith v. Dermatology Assocs. of Fort Wayne, P.C.*, 977 N.E.2d 1, 4 (Ind. Ct. App. 2012) ("A judgment entered against a party who bore the burden of proof at trial is a negative judgment."). On appeal, we will not reverse a negative judgment unless it is contrary to law, *i.e.*, the evidence is without

years since the action commenced. *Tr.* at 28, 33. Finding that Brooks was not personally liable under the Contract, the trial court did not reach this issue. On remand, we direct the trial court to address this issue.

conflict and all reasonable inferences to be drawn from the evidence lead only to one conclusion but the trial court reached a different conclusion." *Id.*

[15] The goal of contract interpretation is to determine the intent of the parties when the agreement was made. *Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 813 (Ind. 2012). To the extent that this case requires that we interpret the Contract, "Interpretation of a contract is a pure question of law and is reviewed de novo." *Cmty. Anesthesia & Pain Treatment, L.L.C. v. St. Mary Med. Ctr., Inc.*, 26 N.E.3d 70, 76 (Ind. Ct. App. 2015) (citation omitted). "If a contract's terms are clear and unambiguous, courts must give those terms their clear and ordinary meaning." *Id.* "We will make all attempts to construe the language of a contract so as not to render any words, phrases, or terms ineffective or meaningless." *Id.* (quoting *Rogers v. Lockard*, 767 N.E.2d 982, 992 (Ind. Ct. App. 2002)).

[16] "A contract is ambiguous if a reasonable person would find the contract subject to more than one interpretation." *Barabas*, 975 N.E.2d at 813; *Tender Loving Care Mgmt., Inc. v. Sherls*, 14 N.E.3d 67, 72 (Ind. Ct. App. 2014). "When a contract's terms are ambiguous or uncertain and its interpretation requires extrinsic evidence, its construction is a matter for the factfinder." *Cmty. Anesthesia*, 26 N.E.3d at 76-77. "An ambiguous contract will be construed against the party who drafted it." *Id.* at 77. If the language is unambiguous, however, we may not look to extrinsic evidence to expand, vary, or explain the instrument but must determine the parties' intent from the four corners of the instrument." *Id.* "However "[a] contract is not ambiguous merely because the

parties disagree as to its proper construction." *Bd. of Comm'rs of Delaware Cnty. v. Evans*, 979 N.E.2d 1042, 1046 (Ind. Ct. App. 2012) (citation omitted).

[17] "Generally, contract claims in Indiana may be brought only against a party to the contract or those in privity with a party." *Winkler v. V.G. Reed & Sons, Inc.*, 619 N.E.2d 597, 599 (Ind. Ct. App. 1993), *aff'd*, 638 N.E.2d 1228 (1994). Corporate officers signing contracts on behalf of their corporation generally are not liable individually for the contracts. *Mullis v. Brennan*, 716 N.E.2d 58, 63 (Ind. Ct. App. 1999); *Winkler*, 619 N.E.2d at 599. Here, the trial court concluded that the Contract was ambiguous as to whether Brooks signed only on behalf of McCoy Masonry or also agreed to be personally liable. We disagree.

[18] Examining the language in the Contract, we conclude that the Contract is not ambiguous in its intent to make Brooks, as the signer, "personally and individually" as well as "jointly and severally" responsible to pay Yellow Book the amounts due under the Contract. *Appellant's App.* at 26. Three parts of the Contract are particularly clear regarding this intent. First, the language in the block provided in pertinent part:

> THIS CONSTITUTES A CONTRACT FOR ADVERTISING WITH YELLOW BOOK . . . IN THE NEXT EDITION OF THE ABOVE TELEPHONE DIRECTORY(IES) . . ., *THE TERMS AND CONDITIONS SET FORTH HEREIN AND ON THE REVERSE HEREOF ARE AGREED TO BY CUSTOMER AND SIGNER*.

*Appellant's App.* at 25 (emphasis added). Second, the language under the line where Brooks signed her name provided: "**Authorized Signature Individually and for the Customer** (Read paragraph 15F on the reverse hereof)." *Id.* (emphasis in original). Third, the language in Paragraph 15F provided: "The signer agrees that he/she has the authority and is signing this agreement (1) *in his/her individual capacity*, [and] (2) as a representative of the Customer . . . . By his/her execution of this agreement, *the signer personally and individually undertakes and assumes, jointly and severally with the Customer, the full performance of this agreement, including payment of amounts due hereunder*. *Appellant's App*. at 26 (emphasis added).

[19]     Here, the Contract set forth, in three separate places, that the signer, Brooks, was assuming personal liability under the Contract. Brooks's failure to read the Terms of the Contract on the reverse side does not make the Contract ambiguous. "Under Indiana law, a person is presumed to understand the documents which he signs and cannot be released from the terms of a contract due to his failure to read it." *Clanton v. United Skates of Am.*, 686 N.E.2d 896, 899-900 (Ind. Ct. App. 1997). Likewise, ambiguity is not created because Yellow Book did not provide an explanation "with respect to what was on the back and what the language meant underneath [her] signature." *Tr.* at 27. If Brooks had questions about the Contract, as owner of McCoy Masonry, she had the responsibility to get the answers before signing the Contract. Since the written Contract between the parties was unambiguous, Brooks's parole

evidence, that she did not understand the capacity in which she was signing, was inadmissible.

[20] We conclude that the essential terms of the Contract between Yellow Book, Brooks, and McCoy Masonry are sufficiently identified by the written agreement, including the identity of all three parties. As a result, we hold that Brooks was not a guarantor, but instead, assumed a primary obligation to perform the Contract with Yellow Book.[7] Finding that Brooks is personally liable under the Contract, we reverse and remand to the trial court for a determination of damages, including interest, and attorney fees.

[21] Reversed and remanded.

Najam, J., and Barnes, J., concur.

---

[7] A guarantee is "a promise to answer for the debt, default, or miscarriage of another person." *S-Mart, Inc. v. Sweetwater Coffee Co., Ltd.*, 744 N.E.2d 580, 585 (Ind. Ct. App. 2001) (citing 38 Am.Jur.2d Guarantee § 1 (1999)), *trans. denied*. "[I]t 'is an agreement collateral to the debt itself and represents a 'conditional promise' whereby the guarantor promises to pay only if the principal debtor fails to pay." *Id*. Brooks assumed a primary obligation to pay Yellow Book, accordingly, we agree with the trial court's conclusion that Brooks was not a guarantor under the Contract.