[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10436
Non-Argument Calendar
_____

D.C. Docket No. 8:16-cv-00052-RAL-AAS

LINCOLN NATIONAL LIFE INSURANCE COMPANY,
an Indiana corporation,

                                                Plaintiff - Appellee,

versus

DOV SUSSMAN,
an individual,

                                                Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 30, 2019)

Before MARCUS, ROSENBAUM and JILL PRYOR, Circuit Judges.

PER CURIAM:

Appellant Dov Sussman, an attorney proceeding *pro se*, appeals from the district court's judgment ordering him to pay Lincoln National Life Insurance Company $234,405.12 plus pre-judgment and post-judgment interest. Sussman argues that the district court erred in granting summary judgment to Lincoln because under the terms of the parties' contract, Lincoln was required to arbitrate its breach of contract claim. He also argues that the district court erred in concluding that he breached the parties' agreement when he refused to pay Lincoln. After careful consideration, we affirm.

## I.    BACKGROUND

### A.    The Parties' Dispute

Lincoln is in the business of selling life insurance products. Sussman entered into a series of written agreements with Lincoln, including a Producer Agreement and a Marketing Agreement, which permitted him to sell Lincoln policies. This appeal is a dispute about whether the terms of these agreements required Sussman to repay a commission he earned for selling a Lincoln insurance policy.

Sussman sold a Lincoln life insurance policy to a third party, the William A. Brown Irrevocable Trust. The policy Lincoln issued to the trust included an

2

alternate cash surrender value rider, which is also known as an "exec rider." For selling the policy, Lincoln paid Sussman a commission of $234,405.12.

About a year after the policy was issued, the trust surrendered the policy. When the policy was surrendered, Lincoln returned to the trust all premiums that the trust had paid to Lincoln, except for a $25 processing fee. Lincoln then sent a demand letter to Sussman, requesting that he return the commission. Sussman refused to do so.

## B.    The Relevant Contract Language

Because the parties disagree about Sussman's obligations, we briefly review the terms of their agreements. The Marketing Agreement that Sussman signed set forth terms governing the commissions that Sussman earned and when Lincoln could recoup commissions, called "chargebacks." Doc. 25-2 at 4.[1] The Marketing Agreement specified that Sussman would be compensated for his services based upon the "terms and conditions set forth in . . . Schedule[] A1/B1," which was attached to the Marketing Agreement. *Id.* The agreement further explained that Sussman's commissions would "be calculated on the basis and using the methodology shown on Compensation Schedule[] A1/B1 attached to the Agreement." *Id.* at 12. Schedule A1/B1 identified the commissions that Sussman could earn for selling various Lincoln insurance products. It also identified when

---

[1] Citations in the form "Doc. #" refer to numbered entries on the district court's docket.

Lincoln was permitted to charge back earned commissions for policies that were surrendered or lapsed. Importantly, Schedule A1/B1 expressly stated that commission chargebacks for policies with "[e]xec [r]ider[s]" were handled differently and directed Sussman to consult the "Lincoln *LifeReserve® UL* and/or Indexed UL Product Guide(s) for full details." *Id.* at 19.

The Product Guide, in turn, stated that when a policy was issued with an exec rider that "an entire new . . . compensation structure [was] used." Doc. 25-6 at 25. After setting forth how commissions were earned on these policies, the Product Guide provided that if a policy with an exec rider lapsed or was surrendered, Lincoln was permitted to charge back the "most recent two years of [c]ommissions." *Id.*

At the time Sussman signed the Marketing and Producer Agreements, he was not provided a copy of and had not reviewed the Product Guide. But Sussman never contacted Lincoln to request a copy of the Product Guide or asked Lincoln any questions about its terms.

The Marketing and Producer Agreements also contained dispute resolution provisions. Sussman and Lincoln agreed to submit to arbitration all claims or controversies arising from the agreements. In addition, the arbitration provisions identified specific cities where the arbitration would be held. Each agreement also stated that it was governed by the laws of Indiana.

4

## C.    Procedural History

When Sussman refused to repay the charged-back commission, Lincoln sued him in federal court.  After discovery, Lincoln moved for summary judgment, claiming that Sussman was liable because he had failed to repay the commission in violation of the terms of the Marketing Agreement.  In his opposition brief, Sussman argued that the court lacked subject matter jurisdiction because Lincoln was required to arbitrate the dispute.  He further argued that under the terms of the Marketing Agreement, he was not required to repay the commission because the Product Guide was neither provided to him nor signed by him.  In his brief, Sussman also moved to strike Lincoln's complaint and summary judgment filings, asserting that Lincoln had attached to its complaint exhibits that included social security numbers, tax identification numbers, dates of birth, and other confidential information about Sussman and the policyholder.[2]

The district court granted summary judgment to Lincoln, concluding that the Marketing Agreement unambiguously required Sussman to repay the commission. The court explained that the Marketing Agreement incorporated by reference the Product Guide's provision regarding chargebacks for life insurance products with exec riders.  Because the Product Guide clearly and unambiguously stated that there was a two-year chargeback period for policies with exec riders, Sussman was

---

[2] When Sussman first pointed out that the exhibits to the complaint included confidential information, Lincoln filed corrected exhibits with proper redactions.

required to repay the commission.  The court rejected Sussman's argument that he was not bound by the Product Guide because he never reviewed or was given a copy of it.  The court explained that because the Marketing Agreement clearly referenced the Product Guide, Sussman was presumed to have read and understood its terms.

In the summary judgment order, the court also considered Sussman's argument that the case should be dismissed because the parties had agreed in the Marketing and Producer Agreements to arbitrate any claims.  The court concluded that Sussman waived his right to arbitration through his participation in litigation and his failure to move to compel arbitration.  After concluding that Lincoln was entitled to summary judgment, the court denied Sussman's motion to strike Lincoln's pleadings as moot.

The court entered judgment in Lincoln's favor and ordered Sussman to pay Lincoln $235,405.12, plus pre-judgment interest and post-judgment interest. Lincoln then filed a motion to alter or amend the judgment to reflect the amount of pre-judgment interest that had accrued and that post-judgment interest would accrue at a rate of 0.88%.  The court granted the motion and amended the judgment accordingly.

This is Sussman's appeal.[3]

## II.    DISCUSSION

On appeal, Sussman challenges the district court's entry of summary judgment in Lincoln's favor.  He argues that the district court erred when it refused to compel arbitration and concluded that the terms of the contract unambiguously required Sussman to repay the commission.  He also challenges the district court's decision to deny as moot his motion to strike.  We consider Sussman's arguments in turn.

### A.    Sussman Abandoned Any Challenge to the District Court's Conclusion that He Waived His Right to Arbitrate.

Sussman argues that the district court erred when it refused to compel arbitration because the parties agreed in the Marketing and Producer Agreements to arbitrate their disputes.  When Sussman raised this argument at the summary judgment stage, the district court refused to compel arbitration or dismiss the action because it concluded that Sussman waived his right to arbitration.  On appeal, Sussman has failed to address the district court's conclusion that he waived his right to arbitration and thus has abandoned the issue.  *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) ("While we read briefs filed by *pro se* litigants

---

[3] After the court entered the judgment, Lincoln filed a motion seeking its attorney's fees and costs.  The court denied the motion without prejudice, directing Lincoln to refile the motion after this appeal was resolved.

liberally, issues not briefed on appeal by a *pro se* litigant are deemed abandoned."

(internal citations omitted)).[4]

## B.    The District Court Did Not Err in Concluding that Sussman Breached the Marketing Agreement.

Sussman also argues that the district court erred in granting summary

judgment to Lincoln on its breach of contract claim.  Sussman contends that he was

not required to repay Lincoln the commission earned on the policy because the

Product Guide was never made a part of their agreement.  We disagree.

"We review *de novo* the district court's grant of summary judgment,

construing the facts and drawing all reasonable inferences in favor of the

nonmoving party."  *Smelter v. S. Home Care Servs. Inc.*, 904 F.3d 1276, 1284

(11th Cir. 2018).  Summary judgment is appropriate if the record gives rise to "no

genuine dispute as to any material fact," such that "the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material

---

[4] Sussman argues that because the parties agreed to arbitrate their dispute, the district court lacked subject matter jurisdiction to hear Lincoln's claim.  But he cites no authority establishing that an agreement to arbitrate a dispute deprives a district court of subject matter jurisdiction to hear litigation related to the dispute.  And the fact that a party can waive its right to arbitration, *see S&H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990), tells us that an agreement to arbitrate does not deprive a court of subject matter jurisdiction.  *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." (internal quotation marks omitted)).

In a related argument, Sussman argues that venue was improper in the Middle District of Florida because it was not one of the locations identified in the agreements' arbitration provisions.  But Sussman did not raise improper venue as an affirmative defense in a motion to dismiss or a responsive pleading and thus waived this defense.  *See* Fed. R. Civ. P 12(h)(1).

fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Under Indiana law,[5] a person "is presumed to understand the documents which he signs and cannot be released from the terms of the contract due to his failure to read it." *Yellow Book Sales & Distrib. Co. v. JM McCoy Masonry Inc.,* 47 N.E.3d 388, 394 (Ind. Ct. App. 2015) (internal quotation marks omitted). "Other writings . . . which are referred to in a written contract may be regarded as incorporated by the reference as part of the contract and, therefore, may properly be considered in the construction of the contract." *I.C.C. Protective Coatings v. A.E. Staley Mfg. Co.*, 695 N.E.2d 1030, 1036 (Ind. Ct. App. 1998). If a reference in a written contract is made to another writing for a particularly designated purpose, the other writing becomes part of the contract only for the purpose specified. *Id.*

The Product Guide's chargeback provision governs this dispute because the provision was incorporated by reference into the Marketing Agreement. It is undisputed that Sussman signed the Marketing Agreement. Schedule A1/B1,

---

[5] Each agreement provides that Indiana law governs the agreement. Because the parties agree that Indiana law applies here, we assume that it does. *See Bahamas Sales Assoc., LLC v. Byers,* 701 F.3d 1335, 1342 (11th Cir. 2012) ("If the parties litigate the case under the assumption that a certain law applies, we will assume that law applies.").

which was attached to and made a part of the Marketing Agreement, stated that the Product Guide governed commission chargebacks for policies that included exec riders. The fact that Sussman did not receive read the Product Guide does not change our analysis. Under Indiana law, Sussman cannot be released from the terms of a contract simply because he failed to read them. *See Yellow Book Sales & Distrib.*, 47 N.E.3d at 394. And there is no evidence that he requested the Product Guide but was denied it. We thus conclude that when Sussman signed the Marketing Agreement, he agreed that the terms in the Product Guide would govern when Lincoln could chargeback commissions for policies with exec riders.

Under the terms of the Product Guide, when the trust surrendered the policy, Sussman was required to return to Lincoln the entire commission. The Product Guide unambiguously provided that when a policy with an exec rider lapsed or was surrendered, Lincoln was entitled to charge back the two most recent years of commissions. Because the trust surrendered the policy within two years of when it was issued, Lincoln was entitled to charge back the entire commission that Sussman had earned on the policy. The district court thus did not err in granting summary judgment to Lincoln on its breach of contract claim.[6]

---

[6] Sussman also argues that the district court erred in granting summary judgment because there were disputed issues of fact about whether one of Lincoln's exhibits, described as an illustration, was signed and whether it was provided to or rejected by the trust. Even if there are disputed issues of fact, the disputes are not material because they have no bearing on whether the Product Guide was made a part of the agreement between Lincoln and Sussman. *See* Fed. R. Civ. P. 56(a).

**C.    Sussman Abandoned Any Challenge to the District Court's Denial of His Motion to Strike.**

Sussman also argues that the district court erred in denying his motion to strike Lincoln's complaint as a sanction for the company having filed confidential information in exhibits attached to its complaint.  After granting summary judgment to Lincoln, the court denied the motion to strike as moot.  On appeal, Sussman argues that the district court erred in deciding the case was moot because there still was a live case or controversy.  But the district court did not conclude that the entire *case* was moot; rather, it denied the *motion* as moot because the court had determined that Lincoln was entitled to summary judgment.  Because Sussman presents no argument on appeal challenging this aspect of the district court's determination, we conclude that he abandoned any challenge to it.  *See Timson*, 518 F.3d at 874.[7]

## III.    CONCLUSION

For the reasons set forth above, we affirm the district court's judgment.

**AFFIRMED.**

---

[7] Sussman also argues that the district court erred in granting Lincoln's motion to alter or amend the judgment to award pre-judgment and post-judgment interest and that the district court judge should have recused because the judge had a conflict of interest.  But Sussman failed to develop adequately either argument.  First, Sussman has abandoned any challenge to the district court's order granting the motion to amend the judgment.  He failed to raise any argument in his brief that the district court was not permitted to award such interest.  *See Timson*, 518 F.3d at 874.  Second, regarding recusal, Sussman's brief simply states that the district court judge may have had a financial interest in the case and should have recused.  Because Sussman raises the recusal issue in only a perfunctory manner without supporting arguments or authority, he has abandoned the issue.  *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014).

11